The Honorable, the Judge of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw by and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Be seated. Good morning. We have a single case to be heard before the panel this morning. Number 246713. Benson versus the Warden. Ms. Medill. Good to have you with us, Ms. Medill. Thank you. Nice to see you again, Judge. May it please the Court, Claire Medill on behalf of Mr. Benson, I reserve four minutes of time for rebuttal. The First Step Act established a system of mandatory time credits for federal prisoners. To earn credits, the FSA requires only participation in so-called EBBRs or PAs. And the statute imposes only a single relevant temporal limitation. A prisoner cannot earn credits for programming done before sentence commencement. But the government seeks to add an additional layer of eligibility. Per the government, it is not enough to have successfully participated in an EBBR or PA. Instead, a prisoner can only earn credits if those activities were specifically recommended via an assessment. The Court should reject the government's attempt to add an atextual eligibility requirement to the FSA's clear mandates. As Judge King himself has said, the FSA makes no exceptions for when the programs and activities are to be provided. Yet the government's assessment requirement imposes location-based and temporal exclusions contrary to the FSA. Counsel, can I ask you a question? What if it didn't? What if the successful participation regulation were applied in a case where... What if your client had been assessed at Wyatt as soon as he got back after he was sentenced? He's assessed, he gets the individualized programming. At that point, would it be counter to the statute to apply the successful participation regulation? Is your position that even once he's been assessed, and assuming he is assessed, as soon as he becomes eligible, it is still the case that he should be able to earn credits if he doesn't do the individually assigned programming and does some different programming? I understand. Our position is no sort of, and I'll explain why. Our position is a prisoner has to do what is recommended. If programming is recommended and they opt out of it or choose not to do it, they're not successfully participating. I would concede that. If they do that... Does the BOP have to approve in advance programs that are eligible for participation? No, Your Honor. It just has to meet a definition. Under the statute, it just has to meet the definition of EBBRPA. It doesn't go on the internet and just pick something? No. If it doesn't meet the statutory definition of an EBBR or PA, and I think it's 3635, it wouldn't qualify. Who figures that out? The BOP, I presume. I will say they are not... Would that be the warden? Whoever is tracking this. It might be Grand Prairie. I will say I looked at a needs assessment yesterday, and they are not recommending specific programming as far as I can tell. They just have needs. Financial needs, yes. Reentry needs, yes. Prisoners are participating in programming, and as Judge King knows, the BOP is just giving them credits. They're not actually tracking this, but theoretically they could be like, okay, is this program that you have followed, is it an EBBR as we've defined it or a productive activity as we found it? The government wants you to say, oh, and it also meets one of your needs. The inmate goes and he takes a finance course, but the Bureau of Prisons doesn't approve it for whatever reason. What happens then? I realize that's not the case we have here, but this just sounds like a mess to me. I think if he takes a finance course and it does not meet the definition of an EBBR, the BOP, I guess, theoretically could deny him credits. As their current practices are, they're not going to. Have these finance, for instance, has the Bureau of Prisons established criteria for what the courses have to be? I don't know the answer to that. I think EBBR, the definition of EBBR includes as an example finance. I'd have to double check that, though. Again, the BOP at present doesn't actually want to do this, and they're not doing it at this granular level. When people are actually in their custody, they are just saying, are you successfully participating in any programming? If you are, you are getting credits. This assessment requirement is contrary to their own practices, which is one of our arguments. As I indicated, this appears to be a mess, but for what you want today, you want your client just to be able to have what he's alleged he's done, you want that to be considered. Correct. The most narrow ground this court could rule on is to reverse and remand with instructions to the BOP to reconsider his FTC credits starting on the day of sentence commencement. Now, the BOP could look at the programs that he did at Wyatt and say, those don't meet EBBRs or PAs. They cannot say, yes, those are EBBRs and PAs under the statutory definition, but because you weren't assessed yet, you don't get to have them. If this court does think an assessment is required, reversal is still the correct outcome, because the BOP could look at his assessment and say, did these programs he did at Wyatt, do they meet his needs? I actually looked up Wyatt's programming, and it looks a lot like EBBRs. Where is Wyatt? I think it's in New Hampshire, Maine. It's in the northeast somewhere. Is it New Hampshire or Maine? I don't know. I apologize. It's a federal facility. That's where he was first? Yes. And then he was transferred to Edgefield? Yes. In South Carolina? Yes. And that's how he ends up in New Hampshire? And that's why we are here today, yes. Can I ask you a question about, I think, the last thing you said before where Wyatt is? The last thing you said, that even under BOPs, even if we are under the BOP regulation on successful participation, there's nothing stopping, even if we are assuming, yes, you can only get credit once BOP, so long as it is consistent with BOP's individualized assessment of your needs. Yes. There's nothing stopping BOP from doing that retroactively? Correct. Okay. Yes. And, in fact, I believe they do do it retroactively because the prisoners are assessed every six months, every year, and they're looking back and saying, were you in successful participation status during that time? So the only thing that is added, sort of by the way your colleague would kind of construct this situation, is that it becomes a timing thing. Like you just, we won't do it retroactively. You effectively are not eligible to earn credits until after you have been assessed. That's what that adds, this kind of timing element. It adds a timing element, but I would also add, I believe, I mean, my colleague can answer it, but I believe the government's position is that even if we do this retroactive assessment, like we're talking about, if the programming he did doesn't match his needs, then he still doesn't get credit. We are arguing that is. Yes. That is contrary to the statute because 3632D4, that is the section. We can't decide any of that. I mean, we don't know what these things are. All we know is he pled that he's done these programs. The O.P. says, no, you don't get credit for it. You did them after you were sentenced, but before we did this assessment. And the district court under Chevron said that's an okay regulation. So all we're looking at is that part of the, is that decision wrong? Correct. Right? So the district court then has to go back and do a Loeb or Bright analysis, at least that, to begin. Yes. I mean, yeah, I agree. You could just reverse and remand for Loeb or Bright analysis, but you could also decide in the first instance what this statute means. I agree with Your Honor that we don't know what the programming is because Mr. Benson asked the court to order his transcript and they did not. So that's like a future us problem, but it would be helpful to have clarification on what the B.O.P. needs to do. Are they looking back retroactively at the assessment to decide if his programming is just Do you want us to reverse because of the Chevron error? I would prefer this court, I think, to answer in the first instance. I think it's fully briefed. It's a purely legal error. You want us to do it now? Yeah. All right. Now what's the specific question you say there is other than this Loeb or Bright question? The specific question is, well, I think there's two as I was talking with Judge Harris. Does the assessment have to come first? There's a timing question. But second, if it doesn't have to come first, is the programming that Mr. Wyatt participated in, does he get credit as long as it meets the statutory definition of an EBBR or PA? We don't have to do that if we don't know what any of that is. You can decide it. You don't need to know because it's the direction. If you tell, if you hold an assessment, they can do programming not specifically recommended by an assessment. It will go back and the B.O.P. will say, okay, as long as this is an EBBR or PA, he gets credit. Well, the district court didn't take any of that up, did they? Of course. Correct. That's right. Do you want us to do it? You don't need to do it. You don't need to get into this mess. You just need to say whether or not. Is that white case a big problem for you? No, Your Honor. White is not a problem. Can you explain more why you think it is a problem? I'm happy to say why it's not. There is a line in there in the due process analysis suggesting that an assessment is required. Judge King was on the panel. I was the petitioner as a counsel. We both know that this question was not in anyone's mind. Mr. White had already been assessed. The question was not about what, you know. But that's a ruling in the white case. It's dicta, Your Honor. It's pure dicta. It's not necessary to the holding. It's not even in the statutory analysis section. And there is a pending petition for re-hearing on bonk and re-hearing in which, among other things, I've asked them to delete that sentence. Tell me what you say the question is. Yes. The question is whether or not the only programming that a prisoner can do is programming specifically recommended by an assessment. So I thought White basically said this particular prisoner, there wasn't evidence that he participated for this period of time. Correct. And if he didn't participate, it doesn't matter what any of the other questions are. Correct. That's why this case is different. You don't have that. All you've got here, we're a motion to dismiss, right?  So it's just, it's his allegation. Yes. He alleged he participated. He told the court, here's the sentencing transcript that noted that I did 20, I completed 20 programs, and please order my education. Yes. White is different both because we have a petitioner who pled participation. It's also a much bigger period of time. So we're talking about 470 days, which is about 150 credits that the BOP is denying Mr. Benson. And truly, what was Mr. Benson supposed to do? He is exactly who the FSA is designed for. He qualifies, he's doing all this programming at Wyatt, and the only reason he's not earning credits is because the BOP won't assess him, won't look at it retroactively, and won't move him faster. So, I mean, if this court is going to hold an assessment is required, and you can only earn programming for an assessment, then we still have a statutory violation because they didn't give him programming for those 470 days. They unreasonably delayed his programming. Another issue the district court never got to.  I am really struggling to kind of figure out what is going on here. Yeah. Because it does seem like, I'm not sure that what BOP is doing is sort of lining up with BOP's lawyers. I 100% agree with that. So just tell me if I am getting this right. Because it seems to me like in BOP's mind, everything works really smoothly. They think you become eligible when you reach your final designated facility. That is when you become eligible. It's when you are assessed, and it's when you start earning credits. So it all works out fine. The problem is they're wrong about when you become eligible. You actually have been eligible in your client's case 15 months earlier. And then it all falls apart because it's like it's a perfect three-legged stool so long as they're right about when your sentence commenced and when you became eligible. But if that turns out to be wrong, then everything is all just messed up. Is that basically what's going on? I don't think it's messed up. I disagree that it's messed up insofar as we were talking. They can just, when they finally get to the designated facility, just assess him. And if he did programming beforehand, you give him credits for those things. But then insisting on this reading of the participation regulation, it made sense so long as you weren't actually eligible until you got assessed. But if it turns out you were eligible 15 months earlier, then this reading of the participation regulation turns out to be a problem. Yes, which is one reason why this court shouldn't adopt it. In actuality, I 100% agree that it actually works very smoothly in BOP's system right now. What happens is prisoners come to their designated facility. They're assessed, and they're put into successful participation status, and they just start earning credits. Literally the easiest thing that would happen is this court says, hey, you don't have to do an assessment first, or an assessment is not required. It'll go back. They're just going to give him credits for those 15 months. They're going to say, you did do programming. When you do programming, we give you credits. I mean, BOP doesn't have an assessment requirement. It's this assessment requirement that the government is insisting upon that is making this mess. I actually don't think BOP wants to track individually and do these decisions. Didn't they give your client credits starting the day he arrived, which was 30 days before he was assessed?  And on top of that, if today Mr. Benson did a program that was not specifically recommended to him, they would give him credits. They don't want to do this parsing because it's difficult, as Your Honor said. Before your time runs out, the government says we don't have jurisdiction here, so why don't you answer that question before time's over. Thank you, Your Honor. This case is clearly not moot, basically because of the warden exception, but for other reasons. The government has to show it's impossible for him to get relief. Their argument is entirely that he's not eligible to automatic release, but he could still get release under the warden exception. And if he has 470 days more, that not only increases the chance that the warden will grant the exception, because the warden will be like, wow, you've really earned a lot of days. Also, as we pointed out, he could get relief afterwards on a reduction in his supervised release term. And I actually think this Court's decision, Towns, is directly on point. Judge King, I have three seconds left. Can I say why Towns? You can answer questions as long as you get them. Okay, thank you. In Towns, this Court said the only question for mootness is, can we give them relief on the question they're asking for now? And we do not look at whether or not a secondary discretionary decision will matter. That is irrelevant. You can give him relief now. You can order that he needs to have his FSA time credits recalculated, and then in the future, he can ask for the warden exception, he can ask for a reduction in supervised release. He could go low. The pattern score is dynamic. Are there any further questions? I'm happy to answer. Okay, thank you. Thank you very much. Mr. Timmons? Good to have you with us. Good to be here, Your Honor. May it please the Court, I'm Todd Timmons. It's a pleasure to be here representing the United States on behalf of the warden of FCI Edgefield. First, the Court does not have Article III jurisdiction because a habeas petition is used to challenge the fact or duration of confinement, but a challenge to FSA time credits where those credits cannot apply does not challenge the fact or duration of confinement. Setting aside the jurisdictional concern, this Court in White has held that time credits are only available Is this analogous to the situation where an individual has completed their incarceration time but they've still got supervised release time and the decision is then made that there was an error, they're no longer incarcerated, but there's still jurisdiction to determine that case because of the supervised release part of it. Well, I don't think that there would be jurisdictional grounds in a case that deal with credits. For good conduct time credits or FSA time credits, I don't think that controversy would survive an individual once they're on supervised release. So you think if there's a dispute over credits under this program, the inmate has to file a habeas petition? I think if there's a dispute over whether or not they can, the duration of their confinement period, they need to file a habeas petition, yes, Your Honor, and if they're released during that time period, that the habeas petition is therefore moot after that. Your argument on mootness is that because of his risk level, he will not necessarily be eligible for release, it will be discretionary, and so it's not certain that it will happen? Is that the basic argument? No, Your Honor, it's not really the discretionary nature of anything that might come after. It's that a decision of this court is not going to do any work for him when he doesn't meet the statutory conditions to apply the credits and change the duration of his sentence. But I thought he could apply for the warden exception, a discretionary exception, so that he could apply the credits. Yes, Your Honor, but this decision on the issues presented to the court, that does not affect that separate process. That's why this case is not Towns. I don't, I, we can move on, but I thought we all the time decide questions about whether prisoners are eligible, say, for certain forms of sentencing relief, even though radically uncertain whether they will actually get a lower sentence, but we've never thought that that deprives us of jurisdiction to determine the eligibility question. I'm just not understanding why, if we were to issue a decision saying, you need to consider whether he can get credit for these 15 months worth of programming he did, why wouldn't that, I understand that credit would not necessarily translate to release, but if there's any chance that in the future it could, even if that would require a discretionary decision, why are we deprived of jurisdiction? Your Honor, the way I read those cases, Lopez-Sorto, Towns, they're both similar. In the Towns, the court said that there has to be a, the court's decision is a necessary antecedent to reaching the discretionary issue. There was a paroled issue in that case, and the court said, we have to have the case, we have to make a decision on the statutory interpretation case before the That's not the case here. These conditions are independent of what this issue is here. But I'm happy to move on to the statutory interpretation, if that's a better use of our time. So I think our first point on that is that Mr. Vinson only raises vague and conclusory allegations. He says he availed himself of productive activities. He says he did programming, but he never alleges what these activities are, so we're left to... Well, this is a pro se filing, and if this were a canceled complaint, you would probably have a better argument. But we have to construe these pro se complaints pretty liberally. Right, Your Honor. I do think Rule 4 says that, under Rule 4 of the district courts, that an allegation from a pro se inmate that cannot, has to be more than vague and conclusory. So I do think that's a fair point. Well, he says he's got all this evidence of the courses that he did, but the Bureau of Prisons lost it or put it somewhere they can't find it, and he's asked the court to get that so he can establish his claim of participation. But I don't think it's the district court's obligation to acquire... We have to accept his allegations. It's true liberally. That's the law. Pro se plaintiff. Correct, Your Honor. But I also think that just saying that you did productive activities or saying that you did programs is a conclusory allegation. I don't think it would be too much to say what he did do so we can at least assess whether that's on the BOP's approved list of programs. I do think that's a minimum requirement that it's not too much to expect of a pro se inmate. And I do want to go to that point, to Your Honor's question about does it have to be on the BOP's approved list. Yes, it does, and here's why. In 3631, Congress says that the BOP and the Attorney General have to study programs and decide what works, what's evidence-based. In 3633, it says the BOP must identify these programs, and in 3634, it has to report on these programs. Is there any dispute about that in this case? I didn't understand your colleague to be saying he can get credit for programming. That literally doesn't count as, I can't even remember the two technical phrases, but doesn't fall into one of those two buckets. I thought that what we were here to talk about was whether Mr. Benson could get credit for programming that did fall into that bucket but was completed prior to an assessment and was not part of this individualized assigned programming. I thought that was the dispute. I don't know that my colleague on the other side would concede my point. Maybe we could just talk about the thing that the district court ruled, which was you cannot get credit because this was pre-assessment. It was not individually assigned to you. Tell me why that was correct. And if I could add to that point, the district court's basis was Chevron, which I think you've conceded that that was error. Correct, Your Honor. We're not saying the Chevron is the right standard. Why don't we just stop there, say, send it back, tell the district court to do the Loeb or Bright analysis. I think I agree with my colleague that this issue is going to be a statutory interpretation. It's reviewed de novo. So I don't know that a remand is necessary to do the analysis under Loeb or Bright. I think the court, if it were inclined... So we do it in the first instance. I think on the statutory interpretation question that that would be appropriate. Yes, Your Honor. So in the first instance, what's the authority in the First Step Act or some other statute that the Bureau of Prisons has to adopt the assessment regulation they have? Yeah, I think the cleanest one would be 3632A3, which says BOP determines the type and amount of programming appropriate for each inmate. 3632B says, again, the BOP determines the type, amount, and intensity of programs. I think if we're... But you're still telling us that we need to do it first and not the district court. You're confessing error on Chevron. The district court got it wrong, and the law is not that anymore. What, Chevron was overruled six weeks after the decision made by Judge John Carolina. And what are we going to... Why would we decide it first? We're a court of review. We have said many times, not a first view. Right, Your Honor. I guess I wouldn't say that the court necessarily needs to, but it is the same approach the court took in Bonney and in White. There was an alleged Chevron error in those cases, and the court directly addressed the statutory interpretation piece. You're saying we have discretion to do it then? I wouldn't know of anything that would take away the court's discretion to handle it however they saw it.  I'm not aware of anything that would take away your discretion, certainly. So, no. You say we have discretion, but we don't... Is that what you're saying? I mean, I certainly would say... We don't have to apply the rule of we're a court of review. I guess I haven't thought about it that specifically, but I wouldn't be... If the court were to decide it needed to be... That's why they call us a court of appeals. We review the claims of the losers in the district court that say they were really right. Well, I mean, is there coming up here? The judge, Judge Erlong, made a Chevron error because the law changed on it. Right. And now it's low but right. Yes, Your Honor. And I'm not suggesting that the court couldn't remand or would be somehow improper to remand. I'm just saying I do think that since we're looking at a statutory interpretation question, it could be reviewed de novo and there may not need to be an intervening district court decision. But Your Honor's point is... So if we did that, tell us what you think the question is. I think the question is whether or not what Mr. Vinson did while he was in Marshall's custody before the BOP had a chance to assess his risk and needs, whether that counts for credit. And that's for the 470 days. 15 months. Right. The year or so that he was detained pending trial plus the 4 months. And whose custody was he in? The Marshall's custody. He was in the Marshall's custody and not in the BOP custody. No, Your Honor. But when he went into custody, he was serving his sentence. Yes, Your Honor. So how do we decide that question when we don't know what he did? Well, you couldn't, I mean, you could affirm the district court on the principle that the BOP, it must be a BOP assigned course. But you couldn't, I don't think you could go to the separate and assess whether or not what he did counts for credit. That is not enough information. We don't know whether any of those were BOP assigned courses. You don't, Your Honor. No. We don't even have, I don't think in the record, anything that tells us how we figure that out, do we? I did cite to the BOP document that the programs that they validated based on their research and their understanding, they have validated certain programs. And that information is in the record. But what's not in the record is certainly whatever courses that Mr. Benson took while he was in the Marshall's custody. Well, there's been no record made here. That's fair. That's the reason it's not in the record. Correct. It's on a motion to dismiss. Well, correct. But the court found that the report and recommendation said that the allegations were vague and the district court adopted that to the extent it wasn't consistent with what he found. So that's why the case did not go forward is they found the allegations to be vague and conclusory. I don't think that's why the case didn't go forward. The district court didn't pass on that. The district court said it's not going forward because under Chevron, I'm going to defer to this regulation that says you can't get credit until after you've been assessed. And I guess I want to ask you to step back a little because I am really trying to figure out what is going on here. Are you defending the EOP regulation that says your sentence doesn't commence until you arrive at your designated facility? Because the district court thought that was wrong. Right, Your Honor. The district court agreed with Mr. Benson's argument. And what's your position? I think that the position is that that regulation says that the eligibility can't begin before you get sentenced, but it doesn't necessarily say that the moment you're sentenced, you begin to earn time credits. I'm sorry. I didn't understand that. I'm sorry. No, I'm sorry. I just didn't understand your answer. There's a regulation out there about when your sentencing commences. Are you defending that regulation as consistent with the statute? Every district court to look at it has said it's not consistent, including the district court in this case. Is your position that it is, in fact, consistent with the statute? I don't think that I have taken a position on it because the – Well, the government should have a position on that, shouldn't it? Yeah. I mean, it's been litigated in this case. The district court ruled on it. What is the government's position on whether the district court was correct? I think if we had appealed – if the case had come down, I think we would have appealed it on that point. I think we would have said that the – But that was the position that the magistrate judge took. Correct. And you all took that position before the magistrate judge. Well, we didn't – And the district court – district judge rejected it. So we did not appear in the case, so we didn't take a position in front of the magistrate. But to answer Your Honor's question, I think the government's position is that – You didn't submit any briefs or anything to the magistrate judge on this?  No, Your Honor. You didn't take a position? The first time we got the case was when it came to me on appeal. We had not worked on it at any point before that. And to answer Your Honor's question, the BAP's position, the government's position, is that that regulation tells you when you may not earn credit. That it says you can earn credit before the law was passed. You can earn credit when you're in pretrial detention. But it does not start the clock on earning credit immediately. But you told me a few minutes ago that when he went into custody, he was serving his sentence. Correct, Your Honor. But – That seems to be contradictory there. The statute says – I mean, we didn't write this, so we're doing the best we can. But the statute says that your sentence commences when you go into custody, like Judge King said. And as I understand the statute, you are eligible to participate from that point. So he went into custody after his conviction and sentence. Do you agree with that? I do, Your Honor. All right. So it will appear under the statute that at that point he's eligible to participate in this program. Do we agree with that? He's only going to be eligible to participate when he has done his assessment, which Congress has told us is during the intake process. Before I asked you about the government's position, and there was a little waver between BOP's position and the government's position, I have actually never seen a case like this. Like, your client is BOP, right? Is that how you represent? Is BOP on board with all of this? As far as I can tell, BOP thinks you start getting credits before you're assessed. You start getting credits when you arrive at your designated facility, which is going to be at least a month before you're assessed. But you are advancing a reading of the statute and the regulation that puts BOP out of compliance routinely and on a widespread basis. And I'm just trying to figure out what is going on here. Does the agency agree with what you're saying today? And if so, does it plan to, at some point, come into compliance with the law? Yes, Your Honor. I mean, I always look at it that I'm here on behalf of the United States. And so, yes, we consult with BOP. But, you know, our position – Does BOP have a different reading of this statute? No, Your Honor. I think they would agree that what we're here today is what does the statute require at a minimum. And if BOP adopts a more liberal practice, that the court in white addressed that and said – I thought your position was you are not eligible to earn credits until you have been assessed and assigned programming. But BOP gives people credit before they have been assessed. So how is that consistent with the reading of the statute you are presenting to us today? I think my job here is to say what does the statute require. It's just like a genuine factual question, like what is going on? Are there communications with the agency to bring BOP into compliance with the law as Department of Justice understands it or not? Is it just we're going to have like this two-track thing where Department of Justice comes to court and says one thing about what this statute means and BOP does a different thing and we're all just going to live with that? Because that's just a little bit uncomfortable as a judge. No, I understand the point. I mean, that's fair. I think, again, the analysis here is what does the statute require? What is the minimum that Congress requires? And if BOP adopts more lenient practices, I don't know that that... But you're saying they're illegal practices, that they are inconsistent with what the statute requires. I guess I would say they go beyond the minimum that the statute requires and that it's more lenient. They make exceptions for individuals when they're going through the assessment process, when they arrive. So is your... I'm sorry, I don't want to... You can go ahead. I just want to make sure I understand this. Your position, the DOJ's position, as I understand it, is this correct, is that an inmate may not earn credits until the inmate is assessed? Or is your position maybe an inmate can earn credits, but that is a matter of BOP discretion? It's definitely not a matter of discretion. That's not what we're arguing. How come BOP is authorized legally to give those credits? You just told me it's fine. They can do more than the minimum. But now you're telling me it's not a matter of their discretion. So what is going on? I think it's a matter of, as the Court in White said, that the BOP's practices do not expand their statutory duties. So we've got to figure out what the statutory duty is and what the minimum statute requires. And then, you know, BOP adopts a more lenient practice in certain instances. I don't know that that makes our statutory interpretation any more or less accurate. It's just they've taken a more liberal approach in certain situations. But your view is, if we look at the facts, there's a list in this case, is that Mr. Benson is not entitled to any credits from the time he went into custody until he was assessed a year and a half later. But he just loses that period of time. That's what I understand. I mean, your argument may be right. I just want to be sure that I understand that's what your argument is. That's correct. The statute says that. But you agree that when he goes into custody, he's serving his sentence. Yes, Your Honor. Well, those things, to me, that's inconsistent. He wasn't serving his sentence. He had gotten credit for the 470 days or whatever it was. Right, Your Honor. I see my time's up. May I briefly respond? You answer questions as long as we've got plenty of time to respond. Yes. Yeah, that's what I was afraid of. The assessment requirement, it starts, Congress told us, that starts during the intake process. Yeah, but if he's serving his sentence, he's serving his sentence. Sentence doesn't mean two different things or multiple things, as the term is used in the statute. When he goes into custody after being sentenced, he starts serving his sentence. That's the logical thing. And you can say that's the way it is. That is true. But you don't give him credit for anything for 470 days. Right. He loses that. Well, we think the successful. He loses the credit for the 470 days. And that can't be right if he's serving his sentence. I think it can be right because the BOP's obligation to assign programming begins during the intake process. From there, they make their assignments. But he's in the custody of the Attorney General. That's what the statute says. Isn't that right? It doesn't say a prisoner of the United States, after being prosecuted, goes to the custody of the Attorney General. That's what the sentence used to be when I was a prosecutor. It was always you'll be in the custody of the Attorney General for five years or whatever it was. It's always the custody of the Attorney General. The Bureau of Prisons is an arm of the Attorney General. The United States Attorney's Office in South Carolina is an arm of the Attorney General. You're the same. Yes, Your Honor. You certainly have no quarrel from me there. He's in custody. He's serving a sentence. We're not parsing that definition other than to point out that the obligation begins to assess during an intake process. And then you have to make your assignments based on the inmate's assessed risk and needs. You're only going to know their risk and needs from having the assessment, which is done during the intake process. It's not done the moment an inmate is sentenced. We're trying to construe this statute, and I guess can you explain to me why Congress would have passed a statute, the effect of which is your eligibility for these credits will turn on when BOP gets around to assessing you. It might be 30 days. It might be 15 months. Purely random and absolutely a matter of BOP discretion when they get around to doing this assessment. What kind of a statute is that? Why would Congress have thought that was a good idea? Because the key component of the statute is that the training be evidence-based and that it's research-based. I'm just saying if Congress had thought you weren't going to be eligible. If Congress had thought that you wouldn't be eligible until you were assessed, just given the care here, I would have expected Congress to say something about when that assessment should happen. It just seems kind of unlikely that Congress would have constructed this whole system where some people wait 15 months before they're eligible, some people wait 30 days. It's just purely random, arbitrary, and entirely in BOP's discretion. What kind of a system is that? Well, Your Honor, Congress did say when the assessment should happen. It should happen during the intake process. Congress said the sentence begins when they go into custody. Yes, Your Honor. The position that you've described for BOP makes some degree of common sense. The problem is I don't see who attracts the statute. And we have to follow the statute no matter how nonsensical we may think it may be. I would disagree, Your Honor. I think it follows the statute. The statute requires the implementation of a risk and needs assessment system. And so I think that language, it shows Congress wants the risk and needs of the prisoners to be factored into this before they start successfully participating. That that's an essential component. My colleague on the other side conceded that if the BOP assigns it to you, you have to do it. That's a common sense requirement. That requirement is not explicitly stated in the FSA, but we all understand that that's what Congress wanted to happen, that you're not going to be able to turn down something BOP asked. And I think we get to that point because we read the statute in context. And we all understand what Congress was trying to do, which was build a system that assessed inmates' risk and needs and provided them programming that was appropriate to those needs. Is there any reason why BOP can't do this retroactively in a case where there's been a 15-month delay before an assessment? Why can't BOP, once it does the assessment, go back and say this programming either was or wasn't consistent with the assessment we've now done? Yeah, I mean, of course I think that's the next case, Your Honor. It's not this case. But if we were to answer your question directly, I think that Congress has given BOP the authority to decide the timing of training, the intensity of training. And if training is not based on predetermined risk and needs, that if we just look at it after the fact and say the assessment that you did months later would have applied earlier, I don't think that's the design that Congress intended with the statutory language. It's probably closer to what Congress intended than this guy should wait 15 months where he doesn't get credits. And I guess your colleague said this, and it was consistent with my understanding. When we do these assessments, we're not talking about like really fine-grained, you should take two hours of that and three hours of that. It's more like do you need alcohol treatment, yes or no. And I'm really not seeing why BOP couldn't just go back and say, oh, good, that was alcohol treatment, that's fine, that's covered. Why couldn't they do that? I mean, you said something about like the tempo or the – what were you saying you wouldn't be able to capture retroactively? Right, so the statute says that BOP determines the type and amount and intensity of training. And I think if we're saying that someone else, whether it's Mr. Benson himself or his caretakers at Wyatt makes that decision in the first instance, that means BOP is not making the call. But why can't they make it later? You said Wyatt? If Wyatt makes the call, the BOP doesn't make the call? I'm saying that, yes, that's kind of – Wyatt's a part of the BOP, isn't it? No, sir. Where is Wyatt? Wyatt's a public corporation. I believe he's in Rhode Island. Wyatt Petition Facility. I might be wrong on the state, but it's a public corporation. It's run by a mayor of the city. He's an agent of the Bureau of Prisons then. I would assume so. Or the Marshals Service or somebody. I would assume so. I don't know the details of if there's a contract or not, but it's a corporation run by a – I took it as part of the Bureau of Prisons, but it's not located in South Carolina. It's not part of the Bureau of Prisons, no, you're honest. It's not part of the Bureau of Prisons, but that's where he was held for 15 months. Yes, Your Honor. And he was serving his sentence? He was. What's the impact of the Wyatt case on this case? I think it's two things. Number one, it's clear that an alleged violation of BOP's duty is not the basis for an award of credits. I think we may all be in agreement at that point on that issue. But the second one is that the White Court said a prisoner must qualify for the opportunity to earn credits by an initial assessment of his recidivism risk and regular assessments thereafter, pursuant to the risk and needs assessment system, which is exactly the point that the government is advancing here. And so I do think that the White Court addressed this issue. They were asked to decide. The opposing counsel says that's dicta, it's just a participation ruling, that's the gist of that case. I disagree, Your Honor. The court was asked to say, is there a liberty interest in First Step Act credits? The court looked at the statute and said, no, there's conditions to obtain them, one of the conditions being that you've been assessed and had your risk and needs assessed. And so I think the issue is squarely presented. The government there made arguments that an assignment, before you can successfully participate, has to be assigned to you. They said that the language success naturally means you've had your purpose set forth for you. And so that issue was presented to the White Court. I mean, there were other issues in White, and my colleague is correct about some of the factual differences. But I do think that statement in White was squarely presented to them, and they decided as a basis for finding no liberty interest in credits. Is your position White controls here? Yes, Your Honor. And pursuant to White, we would have to affirm? I think it certainly controls the two issues that I just said, yes. Yes, Your Honor. Pursuant to White, we would have to affirm? I think so, Your Honor. I think you would look at White, that statement that I just quoted you, that it says a prisoner must qualify for the opportunity by an initial, must first qualify based on the initial assessment of his risk. That's the same thing that the district court said, and that's the position the government is pushing here. If there's no further questions, I'll wrap it up. Thank you very much. Thank you. Ms. Bedell? Thank you. A couple of points. Judge King, you kept talking about how the statute, you know, talks about when you are in custody when you're sentenced, right? I just wanted to say that your position is also supported by the definition of prisoner in 3635. If you read that, it says a prisoner is someone who has been sentenced based on a federal crime or is in BOP custody. So that shows that Congress clearly anticipated people who were not in BOP custody would be earning credits. But the government's position is you can't earn credits until you're in BOP custody. So I just wanted to say that also supports your point. Judge Harris, you were kind of getting at this, and I just wanted to say I completely agree. The problem with this regulation is that it's just reinstituting the commencement regulation that everyone agrees is invalid. As you said, I don't think there's a single district court that says it's valid. And the courts, the cases that have found an assessment is not required, have largely said you can't just reinstitute this by practice and policy. Third, I wanted to say the court does not need to worry about whether or not these are EBBRs or PAs. I understand that that seems like a complicated question. That's going to be a question for BOP to determine if this court remands and orders them to recalculate. And then maybe there will be further litigation. I don't know. I doubt it. Finally, I just wanted to talk about White. The assessment issue was not at issue in White. As this court realized through this hearing, this is a hard and complicated question. And that was not the question in White because White was assessed. I don't understand how it can be necessary to the court's holding when he was assessed and the government never said, oh, he doesn't qualify because he wasn't assessed. I also want to say when White said an assessment was required, it only cited 3632D4. That doesn't say anything about assessment, as I think everyone here agrees. The government's argument has never been that D4 imposes the assessment. It's that some other vague vibes impose it. So White doesn't actually give us a reason to think an assessment is required. And my final point on that is 3632A is really where the government hangs its hat. That is a statutory provision directed at the Attorney General. It is not directed at prisoners. I think in Pervoniskov, which is a case that I cite, it says 3632A clearly sets forth the duties and responsibilities of the eligibility requirements for inmates. So the government is trying to transform Congress's very detailed instructions to BOP about how to run this program into additional eligibility requirements. D4 is what says is required. It says successful participation in EBBRs, PAs. Full stop. It does not say successful participation in EBBRs and PAs that have been recommended via an assessment. And that, I mean, we live, as Justice Kagan said, we live in a textualist world now. That should end the matter. And for these reasons, we ask this Court to reverse and remand with directions to recalculate Mr. Benson's credits. Thank you. Unless you have questions, obviously. Good? Thank you. Thank you very much. And we will come down and re-counsel after we adjourn until this afternoon in another courtroom. And otherwise, this panel is completed. It's work for the day. This Honorable Court stands adjourned until this afternoon. God save the United States and this Honorable Court.
judges: Robert B. King, G. Steven Agee, Pamela A. Harris